IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY JEFFRIES,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN DAVID ORTIZ, et al.,<br><br>Defendants. | Civil Action<br>No. 18-1146 (RBK)(JS)<br><br>**OPINION** |

**ROBERT B. KUGLER, U.S.D.J.**

Plaintiff is a federal prisoner who was formerly incarcerated at FCI Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with an Amended Complaint ("Complaint") raising claims pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA"). For the reasons stated below, the Court will dismiss the Complaint without prejudice for failure to state a claim.

## I. BACKGROUND

The Court will construe the factual allegations of the Complaint as true for the purpose of this Opinion. Plaintiff names the following individuals as Defendants: (1) Warden David Ortiz; (2) Warden J. Hollingsworth; (3) Captain Pena; (4) Captain Fitzgerald; (5) Ms. Flowers; (6) Lt. Weaver; (7) and Lt. Anderson.

This case arises from Plaintiff's conditions of confinement while incarcerated at FCI Fort Dix. As an initial matter, the Court observes that the Complaint, while providing very detailed background information and numerous legal citations, provides very little in terms of salient facts.

The Court gleans from the Complaint that Plaintiff is serving a sentence for child pornography related charges. Plaintiff contends that he is "actively rehabilitating himself." (ECF

No. 18, at 21). Plaintiff alleges that Defendants are deliberately indifferent to his "right to rehabilitate himself in a safe environment without fear of constant temptation to access the internet and fear [of] relapse," due the "staggering" number of contraband cell phones at Fort Dix. (*Id.*).

Plaintiff contends, that apart from one or two massive sweeps per year, prison staff "practically ignored" the cell phone problem, failed "to stop the introduction of cell phones," and failed to "lessen the flow of cell phone introduction" over the years. (*Id.* at 21, 32). Plaintiff then refers to a number of statistics detailing the scale of the contraband cell phone issue at the prison. According to the Complaint, this tortious conduct occurred from April 2013 through April 2017, while Plaintiff resided at FCI Fort Dix. Plaintiff now resides at FCI Petersburg, in Virginia.

Although Plaintiff makes no mention of it in his Complaint, the Court takes judicial notice that the Government charged Plaintiff with distribution of child pornography on April 24, 2017. According to the criminal complaint, from sometime before 2016 until early 2017, Plaintiff was the ringleader of a network of inmates that was "accessing, receiving, possessing, and distributing images and videos of" child pornography, within FCI Fort Dix. (Crim No. 18-171, ECF No. 1, at 7). Plaintiff and other inmates "engaged in this conduct with the use of illegally possessed cellphones from within FCI Ft. Dix, which they used to access the internet." (*Id.*).

The cellphones were available for rent, and Plaintiff "himself bought a cellphone for between $900 and $1,000." (*Id.*). The inmates would download images and videos of child pornography and then store them on a cloud account for later access, instead of the individual's own cell phone. The inmates would also download those images and videos into micro SD cards, capable of storing hundreds of images and videos, for further distribution.

Plaintiff pleaded guilty to an information on April 4, 2018, for one count of possession of child pornography, and the Court sentenced him to 188 months in prison. (Crim No. 18-171, ECF

No. 28). Under his plea agreement, Plaintiff agreed, among other things: that his offense "involved material depicting a minor or a minor who had not attained the age of 12"; that "he knowingly engaged in distribution"; that the involved material portrays "sadistic or masochistic conduct or other depictions of violence . . . or . . . sexual abuse of exploitation of an infant of toddler; that "the offense involved over 600 images . . . [and] approximately 40 videos containing child pornography; and that Plaintiff "was an organizer or leader of the criminal activity underlying the offense" in the case. (*Id*. at 8–9).

Plaintiff now raises Eighth Amendment conditions of confinement claims against the individual Defendants, under *Bivens* and the FTCA. The Complaint does not state when or if Plaintiff has filed a notice of tort claim under the FTCA.

## II. STANDARD OF REVIEW

### A. Standard for *Sua Sponte* Dismissal

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See id.* According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive *sua sponte* screening for failure to state a claim,[1] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC*

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing

3

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678. Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**B.** *Bivens* **Actions**

Section 1983 of Title 42 created a remedy for monetary damages when a person acting under color of state law injures another, but "Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).

The Supreme Court created an implied cause of action in *Bivens* when federal officers violated a person's Fourth Amendment rights. *Bivens*, 403 U.S. at 397. The Court extended the *Bivens* remedy twice more in: *Davis v. Passman*, 442 U.S. 228 (1979) (holding administrative assistant fired by Congressman had a *Bivens* remedy for her Fifth Amendment gender discrimination claim), and *Carlson v. Green*, 446 U.S. 14 (1980) (holding that prisoner's estate had a *Bivens* remedy against federal jailers for failure to treat his asthma under the Eighth Amendment). "These three cases—*Bivens, Davis*, and *Carlson*—represent the only instances in

---

*Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *see also Malcomb v. McKean*, 535 F. App'x 184, 186 (3d Cir. 2013) (finding that the Rule 12(b)(6) standard applies to dismissal of complaint pursuant to 28 U.S.C. § 1915A for failure to state a claim).

which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855.

Because the Court finds that Plaintiff has otherwise failed to state a claim, the Court need not reach the question of whether he may maintain an Eighth Amendment conditions of confinement claim in light of *Ziglar*.

Assuming that such a claim is permissible under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that a person acting under color of federal law caused that deprivation. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006).

## III. DISCUSSION

### A. Supervisory Liability

As a general rule, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676; *Monell v. New York City Dept. Of Social Servs.,* 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel,* 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

In general, there are two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. Under the first approach, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch.*

*Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). A policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [the governing] body's officers." *Monell*, 436 U.S. at 690. A custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id.* at 691.

A plaintiff "must identify a custom or policy . . . and specify what exactly that custom or policy was" to satisfy the pleading standard. *Sheils v. Bucks Cty. Domestic Relations Section*, 921 F. Supp. 2d 396, 417 (E.D. Pa. 2013) (noting that although this standard typically applies to municipal entities, it "applies with equal force to supervisory liability claims premised on a 'policy, practice, or custom' theory" (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).

Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

Here, assuming *arguendo* that there was an Eighth Amendment violation, the Complaint fails to describe how the Defendants, who appear to be supervisors, personally violated Plaintiff's constitutional rights. For example, Plaintiff fails to allege that these Defendants created policies which left subordinates with no discretion other than to apply such policies, which in turn produced the alleged deprivation.

Plaintiff does vaguely allege that the Bureau of Prisons' "policy or custom played a part" in violating his rights but fails to allege what those policies or customs were,[2] and Defendants'

---

[2] Plaintiff does mention one policy, that Fort Dix designated cell phone possession as among the "greatest severity level prohibited acts," but plainly, such a policy would reduce, rather than increase, the number of contraband cell phones within the facility. (ECF No. 18, at 14).

connections to those policies or customs. (ECF No. 18, at 12). Stated differently, Plaintiff takes great pains to explain the *results* of the prison staff's efforts, *i.e.*, by detailing the number of cell phones confiscated at the prison, but fails to allege *what* were the policies or customs that led to those results, and *how* they relate to the individual Defendants.

Nor does Plaintiff allege facts to support the personal involvement of these Defendants, reciting only the legal conclusion that they somehow violated Plaintiff's constitutional rights. (ECF No. 18, at 4). Indeed, in the entirety of the Complaint, Plaintiff makes no factual or legal allegations specific to any particular Defendant. Once again, however, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676.

Accordingly, the Court will disregard the Complaint's "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported merely by conclusory statements," *Iqbal*, 556 U.S. at 678, and dismiss Plaintiff's claims against the Defendants, without prejudice, for failure to state a claim.

### B. Eighth Amendment Conditions of Confinement Claims

Even if Plaintiff had properly alleged the Defendants' supervisory involvement in this case, the Complaint fails to state a violation of the Eighth Amendment.

Generally, the Third Circuit has held that prison conditions "may rise to the level of an Eighth Amendment violation where the prison official deprived the prisoner of the minimal civilized measure of life's necessities and acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health." *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (internal quotation marks omitted). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate

7

health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

Applying those principles to the present case, the Complaint's most critical failure is failing to allege or explain, how the *potential* access to cell phones constituted a serious risk to Plaintiff's health. Plaintiff summarily concludes that the cell phones "deprived him of his right to bodily integrity and to be housed in safe conditions," as well as to rehabilitate himself. (ECF No. 18, at 4). Plaintiff contends he had a "fear of constant temptation to access the internet and fear of relapse." (ECF No. 18, at 21).[3]

Beyond these vague allegations and Plaintiff's conviction on child pornography charges, however, the Court is left to speculate as to why or how access to cell phones could present a risk of harm to Plaintiff. For example: What exactly did Plaintiff feel compelled to do with access to the internet? Did Plaintiff feel compelled to consume child pornography—*while in prison*? How strong was this compulsion? Did Plaintiff have any other symptoms beyond a vague sense of fear or discomfort? How was Plaintiff's mental and emotional health during the relevant time period? The Complaint answers none of these questions, and Plaintiff cannot simply rely on the bare conclusion that he suffered harm.

To be sure, Plaintiff has described an unpleasant, perhaps even uncomfortable, condition of his confinement, but the Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Plaintiff's conclusory allegations of harm are a far cry from, for example, "the devastating mental health consequences caused by long-term isolation in solitary

---

[3] It strains credulity to believe that Plaintiff feared relapse or accessing the internet, or was trying to rehabilitate himself, while simultaneously leading a child pornography distribution network, with contraband cell phones, within the prison. At this stage of the case, however, the Court "must accept as true all of the [well-pleaded factual] allegations contained in a complaint." *Iqbal*, 556 U.S. at 678.

confinement." *Palakovic*, 854 F.3d at 225–26 (noting that lengthy exposure to solitary confinement can violate the Eighth Amendment as it can cause "severe and traumatic psychological damage, including anxiety, panic, paranoia, depression, post-traumatic stress disorder, psychosis, and even a disintegration of the basic sense of self identity . . . [and] high rates of suicide and self-mutilation").

Ultimately, without more, "the Court is left to speculate as the nature and degree of harm [*potential*] exposure to pornography might cause" Plaintiff and whether those circumstances "subjected him to unreasonably harmful conditions of confinement." *Cf.*, *Jones v. Trese*, No. CV 16-1453, 2018 WL 4344979, at *5 (W.D. Pa. Sept. 11, 2018), *aff'd sub nom.*, *Jones v. Treece*, 774 F. App'x 65 (3d Cir. 2019). "Such speculation is untenable as a matter of pleading." *Id.* (citing *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level.")).

Turning then to deliberate indifference, as discussed above, Plaintiff does not allege any facts specific to any Defendant. Consequently, the Complaint fails to allege that any of the Defendants subjectively knew of any risk of harm *to Plaintiff*. In other words, the Complaint does not allege "that any Defendant was aware that [*potential*] exposure to a pornographic video would aggravate or harm Plaintiff's mental health," or that Plaintiff felt any compulsion to acquire a cell phone—in prison—for the purpose of consuming, presumably, child pornography. *See id*.

Finally, the Court rejects Plaintiff's claim to the extent he alleges that Defendants "interfered with [his] right at attempting to rehabilitate himself." (ECF No. 18, at 12). Plaintiff, to his credit, acknowledges that "prisoners have no constitutional right to rehabilitation." (*Id*.); *Abraham v. Del. Dep't of Corr.*, 331 F. App'x 929, 931 (3d Cir. 2009). Instead, Plaintiff contends, under *Cruz v. Beto*, 405 U.S. 319 (1972), that prison staff cannot "interfere[] with an inmate's

9

attempt to rehabilitate themselves." (ECF No. 22, at 16). Plaintiff, however, misunderstands the holding in *Cruz*. In *Cruz*, the Supreme Court held that prison staff could not prohibit the free exercise of religion, in that case, Buddhism, which, according to Mr. Cruz, aided in rehabilitation. *Cruz*, 405 U.S. at 322. Plainly, interference with Plaintiff's efforts to rehabilitate and abstain from consuming child pornography, do not impact the same rights as interference with the free exercise of one's religion.

Accordingly, for all of these reasons as well, the Complaint fails to state a violation of the Eighth Amendment.

### C. Statute of Limitations

Additionally, the Court must address the statute of limitations as it appears that many of the allegations are time barred on the face of the Complaint. A court may raise the issue of the statute of limitations *sua sponte* at the screening stage. *See Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 111–12 (3d Cir. 2013) (per curiam) ("Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* under § 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.").

Our jurisprudence takes the statute of limitations for a *Bivens* claim from the forum state's personal injury statute. *See Hughes v. Knieblher,* 341 F. App'x 749, 752 (3d Cir. 2009) (per curiam) (citing *Kost v. Kozakiewicz,* 1 F.3d 176, 190 (3d Cir. 1993). New Jersey's statute of limitations for personal injury actions is two years. *See* N.J. Stat. § 2A:14–2. "While state law provides the applicable statute of limitations, federal law controls when a *Bivens* claim accrues." *Peguero v. Meyer,* 520 F. App'x 58, 60 (3d Cir. 2013) (citing *Wallace v. Kato,* 549 U.S. 384, 388 (2007). Under federal law, a *Bivens* claims accrues when a plaintiff knows of or has reason to

know of the injury, "not upon awareness that this injury constitutes a legal wrong." *See Hughes,* 341 F. App'x at 752 (citing *Sameric Corp. v. City of Phila.,* 142 F.3d 582, 599 (3d Cir. 1998)); *Hilton v. Kronenfeld*, No. 04-6420, 2008 WL 305276, at *7 (D.N.J. Jan. 29, 2008) (quoting *Oshiver v. Levin*, 38 F.3d 1380, 1386 (3d Cir. 1994)).

With regards to Plaintiff's FTCA claim, a plaintiff must present the claim to the appropriate agency within two years of the accrual of the claimant's cause of action. *See* 28 U.S.C. § 2675(a); *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 457 (3d Cir. 2010). The agency then has a six-month period within which to settle or deny the claim. *See* 28 U.S.C. § 2675(a). If the agency denies the claim, a claimant then has six months from receiving a notice of final denial to bring suit in federal court. 28 U.S.C. § 2401(b). Failure to comply with either the two-year window to submit an administrative claim or the six-month period to file suit renders a claimant's cause of action "forever barred." *See Seiss v. U.S.*, 792 F. Supp. 2d 729, 732 (D.N.J. 2011).

Here, assuming Plaintiff had valid *Bivens* claims, the Complaint alleges, with no further specificity, that the "deprivations occurred during April 2013 to April 2017." (ECF No. 18, at 13). Plaintiff implies that the alleged deprivations caused him noticeable harm, and therefore, he knew or should have known of his injuries throughout that time period. Plaintiff did not, however, file his first complaint until January 26, 2018. (ECF No. 1). As a result, the statute of limitations bars any *Bivens* claim that arose prior to January 26, 2016, which encompasses a substantial portion of Plaintiff's allegations. *See Peguero*, 520 F. App'x at 60.

Accordingly, Plaintiff's *Bivens* claims that arose prior to January 26, 2016, are time barred, and the Court will also dismiss those claims as untimely. The Court observes that some of these allegations are also likely untimely under the FTCA, but Plaintiff has not alleged when or *if* he has filed a notice of tort claim under the FTCA.

If Plaintiff believes that he can assert facts that warrant tolling, he may move to re-open this case and to file an amended complaint addressing: the basis for such tolling; the date Plaintiff filed his notice of tort claim; the date the relevant agency denied his claim; as well as addressing all the other deficiencies discussed in this Opinion.

**D. Failure to Exhaust**

Finally, the Prison Litigation Reform Act mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e).

Although defendants must plead and prove exhaustion as an affirmative defense, and a "prisoner need not allege that he has exhausted his administrative remedies," a Court may *sua sponte* dismiss an action where a plaintiff's "failure to exhaust is clear on the face of the complaint." *Johnson v. Wetzel*, No. 17-0364, 2019 WL 1282603, at *4 (M.D. Pa. Mar. 20, 2019); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007); *McPherson v. United States*, 392 F. App'x 938, 942-43 (3d Cir. 2010); *Ray v. Kertes*, 285 F.3d 287, 293 n. 5 (3d Cir. 2002); *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000) (affirming *sua sponte* dismissal of an excessive use of force claim where plaintiff conceded that he did not exhaust administrative remedies).

Upon review of the Complaint, Plaintiff facially admits that he has not exhausted his administrative remedies prior to filing this action. (ECF No. 18, at 6). Plaintiff indicated, under penalty of perjury, that he had not "previously . . . sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in the Statement of Claims." *Id*. Plaintiff attempts to explain this failure by stating that "[w]hen the action was initiated, Plaintiff was no longer housed at the institution where the violations occurred. Staff at the subsequent

institution advised Plaintiff that administrative remedies pertaining to events at another facility would not be accepted or entertained." *Id*.

These statements, however, offer no explanation as to why Plaintiff failed to exhaust his administrative remedies from the entirety of April 2013 through April 2017, the time of the alleged harm. Accordingly, the Court will also dismiss the Complaint without prejudice for Plaintiff's failure to exhaust his administrative remedies. If Plaintiff believes that he can assert facts that excuse his failure to exhaust, he may include such arguments in a motion to re-open and amend, in addition to addressing all the other deficiencies discussed above.

## IV. CONCLUSION

For all of the reasons set forth above, the Court will dismiss Plaintiff's Complaint without prejudice. An appropriate Order follows.

Dated: February 21, 2020                                s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge